Good morning. Good morning, Your Honor. May it please the Court, I'm George Arend, along with Co-Counsel Garth Dana. We represent Appellant Paul Ahmann. I'd like to reserve three minutes of my time for rebuttal, if I may. We're here to ask the Court to reverse summary judgment dismissing Mr. Ahmann's complaint and remand this case for, at a minimum, for trial. I think you can rule summary judgment in our favor on some of the issues that are present here, but at a minimum, a trial. We're here because the District Court ruled— May I interrupt you, Mr. Arend? Are you appealing the denial of your motion for summary judgment? We did not—well, yes. We said—we noted in the de novo review of summary judgment, this Court certainly has discretion to enter summary judgment in our favor. Do you want to address that at all? Pardon? Do you want to address your appeal from the denial of your motion for summary judgment at all? I think it is part of the same—I don't want to address it separately from the— Okay, fine, gotcha. I don't want to take your time up. Thank you, Your Honor, and thanks for the question. We're here because the District Court ruled that Mr. Ahmann, in the District Court's rule, did not provide adequate notice of exactly how his religious beliefs conflicted with the state of Washington's vaccine mandate. And so what you're called upon here to decide today is what kind of notice is required, what level of detail. One suspects from the defense side that an infinite regression of detail is necessary, but under this Court's existing precedent, I don't think we have to go that far. Is it a question of fact or a question of law? I think it's a question of—I think you could rule in our favor as a question of law on this case, but as an alternative, you could find a question of fact. It boils down to he chucks the box, he has a religious exemption. They, meaning the state, you know, they then ask for further explanation, which in the first form says you could do that. So my question to you is, is it your position that just by filling out the request for religious exemption that he has satisfied his obligation? So the Heller case, this Court's decision in Heller says that the employer needs to be informed of the existence of the conflict between religious beliefs and an employer's work requirement. That could entail—and the employer is entitled to inquire whether the religious beliefs are sincere to make sure that it's not just a subterfuge for getting out of a work requirement on nonreligious grounds. Let me just be up front about what my concern is, is that there is no link to religious beliefs here. I mean, you could say, well, it's evil, but that's not necessarily a religious belief. It's moral. It's financial. But what religious belief—and I think even just a hint of religious belief might get him across the wire— but what is it that, in your view, gives the employer notice of a religious belief? So Mr. Allman said four things. He says that it's tied to abortion, that abortion isn't just a philosophical— Where does he say that? He says that in ER 112 and 113. He says that he won't take the existing COVID vaccine because it employs the products of abortion in its development. I'm paraphrasing there. And then he says he would take the Novavax vaccine when it became available because it did not utilize the products of abortion. So he doesn't say the word abortion, but your point is he means that. Yes. And that's my point. You're reading in all of that. I'm looking at what he told the employer, which is his reasons being basically he doesn't want to have the blood of a baby on his hands. He doesn't want the use of baby parts. And he doesn't want to put a monetary value on babies. So that's what he actually says, right? Yeah. So I think if we put blinders on, we say the blood of any baby on my hands is something other than abortion and utilizing the products of abortion, the development of this vaccine in this case. And then he says it's evil, it's selfish, and it devalues human life. Those are not—you could say in an isolated context. If you take those words completely divorced from their context, where he first checks the box, I can't take this vaccine because of religious beliefs. And then they say, explain how the vaccine conflicts with your asserted strongly held beliefs. I will not have the blood of babies on my hands. It's evil, it's selfish, and it devalues human life. And I will take a vaccine that doesn't—if we go on to— Right. He says he would take a different kind of vaccine. Yeah. He calls it a clean vaccine. Clean vaccine. Again, doesn't use the word abortion. But I don't think we can say—look at these words in isolation from their context. In the context of this controversy that exists and existed regarding the moral and religious objections to the COVID vaccine, I don't think that this— Especially—okay, so let's say we're not going to decide this as a matter of law. If we decide it as a question of fact, all reasonable inferences in favor of Mr. Ahman say this is a religious reason. He is notifying the Department of Transportation that there is a conflict. They know of the existence of the conflict. And I don't think you can read those words in isolation to say, well, it could be just a completely wholly secular conflict based on some non-religious moral principles. Nothing akin to what you had in Detweiler, which involved a different element of the— Can I ask here—they went back to him after they got this and said, I'm paraphrasing, but can you provide some more information, which he then didn't do. So what's your response to that aspect of the record? Yeah, they didn't ask him for more information about his religious beliefs. They asked him, and so there's a couple record citations. The opportunity to respond is on ER 87. Let us know. It's pretty definitive. Let us know if you're going to comply with the vaccine mandate. So you have an opportunity to respond in writing that includes advising us that you are going to validate your vaccine before October 4th, 2021. And so if you look at ER 87 and the other notices, ER 83, ER 86, even ER 90, he's presented with a take it or leave it option. And I see I'm into my rebuttal time, but I also want to say— Go ahead and keep going. Pardon? Go ahead and keep going. He talks to his superintendent, Fitecow, who says, if you don't get the vaccine, you are going to be fired. And that's part of the context here, too. When you look at his deposition testimony, this is—I don't have the ER site handy, but I know the supplemental ER site, I believe, is 217 through 219. Mr. Ahman says, I don't know what more I was supposed to tell them. I did the best I could to tell them of why I had a religious objection. After telling them I had a religious objection, and I realized that we don't want every employee to be a law unto themselves. But in the context here, a religious objection, I'm explaining it in religious terms, which in the context can only be—certainly in the light most favorable has to be understood in religious terms. This is not a subterfuge, especially where the Department of Transportation admits no question about his credibility, no question about the sincerity of his religious beliefs. They did question it, but the judge found in his favor that they didn't provide any evidence of insincerity. The lawyers questioned it. Ms. Amy Fermo, the assistant director of HR for the Department of Transportation, said, I have no questions about the credibility or the sincerity. And his supervisors, Steinmetz and Superintendent Feitkau, both said, we know you're sincere about this. And so there was no question on the factual record, as distinguished from the argument, about the sincerity of his belief. There's no question about the sincerity. I think what you would say is, well, the judge, or now us, have to somehow impute that to be a religious belief as a matter of law? Or you alternatively say, no, it's a question of fact, let's have a trial? I'm a little confused by which position you're taking. So if I'm honest with you, if you look at this record, I don't think there's any way you can conclude that this is a non-religious request for accommodation. However, as a backup, you may disagree with me. And I think you could conclude, and we would certainly welcome, as opposed to dismissal, a ruling that it's a question of fact and we'll present this to a jury any day. Appreciate that. Thank you. We'll put two minutes up on the clock when you come back. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Kai Smith on behalf of Eppley, Washington State Department of Transportation. Title VII requires an employee requesting a religious accommodation to provide enough information for the employer to understand that the belief is religious in nature. Amin did not do that here. He identified no belief underlying his objection, not even a hint, as Judge McEwen noted in her question. You say there's no hint. Let me suggest to you, baby parts in a vaccine, does that not hint to you that they were procured from aborted fetuses? It does not, Your Honor. Where else could they be procured? Well, I guess the question seems to be getting at whether abortion is inherently a religious objection, and the answer is no. Your answer is you can't object to abortion on a religious basis? You can object to abortion on a religious basis, yes. And he said that he didn't want to be part of evil, right? That's correct. Do you know what the last phrase of the Lord's Prayer is? I do not. And delivers not into evil. That is part of our Father. Does that perhaps connote to you that there might be a religious basis to his use of the word evil? Some people, maybe even many people, would read that and invoke in their minds a religious connotation. Some people would? Then you would stipulate that this should be reversed and remanded for a trial on the issue of fact of whether a reasonable person would know there was a religious claim? I would not, Your Honor, because the record here shows that WSDOT received exemption requests from other employees at WSDOT who stated an objection to abortion or an objection to fetal stem cells that identified or were based on non-religious reasons. So what should he have done more in his statement here? There are a variety of additional things that he could have included. The most straightforward thing would be for him to identify his Catholic faith. But I thought Ms. Fermot testified that we don't expect people to do that. They don't expect that, and it's not required, but that would have been the most straightforward way. And it's the way that many of the employees in the variety of cases cited by Ahman on the other side. Ms. Fermot said people didn't have to identify their faith. So what if he had just said, based on my religious beliefs, I will not have the blood of any baby on my hands? I don't think that would get over the line because that is the same type of conclusory language that Detweiler cautioned against and is really no different from the box that he checked on the form. There needs to be something more than just a labeling of what follows as religion. There needs to be a Detweiler. Let me read to you what Judge Hall found to be sufficient in Heller. She found, on the basis of Redmond, I am not able to work on Saturday because of my religious obligation. It's sufficient. Which case was that, Your Honor? I missed your. That was Redmond. This is a Heller case. She had a citation from Redmond. Heller cites the Seventh Circuit decision. Excuse me. I don't know what happened there. The Seventh Circuit decision. In that case, the court specifically noted that that instruction or practice came from the Bible. And likewise, in Heller, which my colleague on the other side cited, the employer was aware of the fact that the employee was Jewish and needed to attend the ceremony, which was Jewish in nature. That was the first thing that the court mentioned. But you knew that Amun was a Catholic. It so says in district court opinion. Wajda did not know that he was Catholic at the time. The district court concluded that he had a sincere religious belief rooted in Catholicism at the time, but he did not find that Wajda knew that or had notice of that. You have to put yourself in the perspective of Mr. Amun, who is not a lawyer, who is just someone who is working here and fills out a form. I mean when somebody writes that they devalue human life, don't most people associate that with a view of abortion? I don't think so, Your Honor. Again, the record in this case shows that there were employees who submitted objections to the vaccine based on opposition to the use of field stem cells or abortion that were not based or rooted in religion. And there are a variety of cases. But the whole language of this, right, the blood, evil, devalues human life. I mean this is all in the terminology, if you will, of a religious objection, no? It's not. If anything, it invokes a moral or perhaps a philosophical objection to it, but does not invoke the type of religious terminology that opponents of. Is it your position that religion is not moral? I don't have an opinion on whether religion is moral or not, but there certainly can be moral views that are not religious in nature. Right. I mean he could say I have a moral objection to this or he has this objection based on money, for example. But the question is when he says he's worried about having the blood of a baby, whether that's enough to put the state on notice that what he's talking about is an aborted fetus. So you're saying that even if he were to say I am opposed to using aborted fetuses for a vaccine, that would not be sufficient? It would not be sufficient. There would need to be, again, that nexus that Detweiler talked about because of my Catholic faith, because of my views on abortion that are informed by my Christianity. That is the type of language, and those are just representative. So what's missing here, as I understand it from your point of view, is any nexus between his objection and religion. That's correct, Your Honor. I mean, but Detweiler talked about this and said, look, there's a distinction between testing, which was what was that issue there, and the vaccine. And it's been recognized by lots of courts that there's a recognized religious objection to the vaccine based on abortion. And so knowing that, I mean, if you just got this form in response to somebody who filled out a religious exemption, why would we not treat this for what it apparently is, which is a religious statement? Again, Your Honor, the record in this case shows that WSDOT received exemption requests that opposed the vaccine based on the use of fetal stem cells. Those aren't in front of us. I mean, all we can look at is what we have here. Well, the testimony of Amy Fermo, who was the chair of the committee who evaluated these requests and reviewed them, testified that WSDOT did receive exemption requests that stated opposition to abortion and stem cells that were not based on religion. That's at 1-SER-53. Right, but my point is we have to evaluate his statement, right? We're looking at his statement and asking, would that have put the employer on notice that there was a religious objection to this? And Ms. Fermo said, well, we don't expect people to have to identify their actual faith. So if he wasn't expected to do that and he filled out a religious exemption and used these other things, I'm still trying to ask myself, what more would we demand he do? Again, the most straightforward way would be to him to have identified his Catholic faith as the basis of his objection. Right, but what do we do with her testimony that says we actually don't require people to do that? What she was referring to there is that there are additional ways to convey a religious objection to something without identifying it. Okay, so he can't, if he just said everything he said, and I am opposed to abortion, that wouldn't be enough in your view, right? That wouldn't, Your Honor. Because people can be opposed to abortion that has nothing to do with religion. Absolutely, courts have recognized this. Even the Supreme Court in Dobbs recognized that there are philosophical and moral opposition to abortion that have nothing to do with religion. So what if he said, I am opposed to abortion because of my religion? That would not have been sufficient, I don't think, because, again, that is the type of labeling or conclusory language that is no different from the checkbox, and I don't think that that would satisfy the definition. But what if he said, I can't take the vaccine because I'm opposed to abortion because my religion says that abortion is evil? I think that likely would qualify and get him over. Well, that seems odd to me because the word evil, I mean, of course, it's used as Judge Bea indicated. But if you look at the definition for evil, almost every definition in Merriam-Webster's dictionary doesn't have anything to do with religion. I mean, it's usually a moral or a subjective judgment. So I'm not sure that that answers the question. And you don't have to be Catholic to oppose abortion on religious grounds. So that doesn't quite get you over the finish line. That is also true. So now I'm trying to figure out. I appreciate that, you know, there's other exemptions that have been granted. But what you're saying, if I get it, is that just because you say I don't like the baby's blood on my hands, that that doesn't fairly identify a religious objection. That's correct. That that does not again, there is there is no nexus to the person's nexus. There is no religious basis identified. And so if he says, in addition, because it violates my religion, would that be OK? I don't think that would under Dettweiler, Your Honor. I think that that is a type of, again, a label or a conclusory sentence that doesn't really connect the objection to the religious belief. If he says all the things he said. And I'm opposed because of my religion. Whose tenants don't permit use of baby parts, would that be OK? I think that likely would qualify and get him over the notice. We're kind of splitting hairs here. I mean, you know what I'm saying is I appreciate that this may have left the state. In an ambiguous situation, I see I'm over your time, but if I may answer the other thing I wanted to get to, I'll just briefly note is washed out, provided him with opportunities to clarify his requests. And he didn't. They sent him an initial letter that informed him that he did not that it did not have sufficient information to identify the religious basis. Most people, in response to something like that, would question what additional information can I provide that would have provided it. Did they ask him what particular tenant of your religion does this violate? They did not. I don't know that. I don't know that an employer could could could do that lawfully. But I will say that the record shows that there were employees of washed out who received these identical notices stating that the requests lacked sufficient information to enable washed out to make a determination. And those employees supplemented them with additional information. And did they tell Mr. Ahmed how the other employees supplemented and that would be sufficient? No, because Mr. Ahmed ignored the requests and didn't respond. But they didn't ask him that question. They didn't supply that information. Can you tell us more? They didn't say. And other employees have said this and that has been sufficient. Is that your case? They didn't ask him that. They did not ask him that. Yeah. Well, I mean, this gets into, you know, what our decision in Heller talks about. Right. When it says, well, you know, the only need to have enough information to permit the employer to understand the existence of the conflict. And then they go on to say any greater notice requirement would permit an employer to delve into the religious practices of an employee. And so. I guess I question maybe some maybe some employees did do that. The question is whether the law requires them to do that. Again, in Heller, though, immediately after the court, we don't usually we don't usually quiz people about their religious practices. Right. And Wajda wasn't quizzing them. They were asking for enough information to determine that this stated objection was rooted in religion and not a nonreligious belief, which had been reflected in other requests that they had received. And in Heller, I will note that immediately after the court references that standard about just having enough information to show the existence. The first thing it says is that Young and Bowman knew that Heller was Jewish. Young knew that Heller's wife was studying for conversion. Those are central points here that are missing here. The employer did not know that Amman was Catholic. The record shows that. And if I may, Your Honor, I know I'm well over time, but in light of these questions, the concern that Heller identified was a situation where an employer is being asked to delve deeply into someone's religious beliefs. In other words, to say, does your faith really require you to take Saturday morning off work or to attend Friday night religious services? That concern is not at issue here. WSDOT simply wanted enough information to understand that this was rooted in a religious objection and not a nonreligious objection. Okay. Thank you very much. Unless my colleagues have further questions, we'll hear rebuttal. Thank you. Thank you. It feels like talking about what Mr. Amman said, we're listening to only one side of the phone conversation. You can't understand what he said in response unless you look at what the question was. How does this conflict with your strongly held religious beliefs? Any vaccine that was brought about by the use of baby parts in the research and development process or by using them in the ingredients will not be used on me with my knowledge because and then he goes on to say it's evil, selfish and devalues human life. That should be enough to notify WSDOT of the existence of a conflict in compliance with the Heller decision. We're kind of in this situation where you're asking us to step in and say without the specific identification of religion that he's done enough because we as judges know that sometimes abortion is a religious belief. But he's answering. I'm not quite asking you to go that far because he's answering a question. How does your religious belief prevent you from receiving this? And then he endeavors to provide an answer. Judge Bress asked a good question about what more is required and to what purpose. Right. If he said I'm Catholic and obviously you pointed out that human right or human resources director Firmo didn't said that that wasn't required. None of the forms asked for that. Nobody followed up to find out if this was a religious belief. But other than knowing that it's religious in nature and it's conflict. Plus, he's got additional detail that he's provide here. If we're going to go any further than that, we're going to need employees to go get a theological advisor to say, why do I need to do this to bear consistent witness to my faith to avoid material cooperation with something? He could he could do something pretty simple. He doesn't have to be Catholic to have this religious belief. He could just say he could say I'm Catholic and that might do it. Right. But he might not be Catholic. Maybe he's a member of the Universal Life Christian Church or something like that. He could just put that in. So it's question of degree and notice. It seems to me not so much what he did put in, but what he didn't put in. And so the point that we have to decide is, is this notice enough to the state of Washington? And you say, well, yes, because you should know, meaning state of Washington or us judges, we should know that this is. Abortion related and therefore religious belief. So we have to kind of fill in the blank is what you're saying. If I'm over my time, may I answer? Yes, I don't. I don't believe that I'm really asking you to fill in any blanks. The question is, what is your religious belief? He says it. The answer is his statement of religious belief. You don't need to fill in any gaps to conclude that that's religion. That's his best attempt to encapsulate what his religious belief is in order to put them on notice. That's why I think we get judgment as a matter of law, but certainly a question of fact at a minimum. And so I'm just trying to imagine the trial now. OK, so you're going to bring in he's then going to testify. I am Catholic or whatever. And you're going to bring in a priest or whomever. And then I don't know what the state of Washington will do. I'll say, well, now we know what we didn't know before. So what would the trial look like? Because you said, alternatively, let's have a trial. You're going to have to tell the district court judge how to instruct the jury. And I'm asking the court to instruct the jury that if they know he has a religious conflict with the vaccine requirement. That that is sufficient to satisfy the second element of his prima facie case in accordance with with Heller. OK, I'd answer your question. It does. Thank you. Thank you, Your Honor. OK, thank you both. Thanks both counsel for the briefing argument. The matter is submitted and we're concluded for the day.
judges: McKEOWN, BEA, BRESS